NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 74

No. 2019-255

State of Vermont                                          Supreme Court

                                                          On Appeal from
   v.                                                     Superior Court, Orange Unit,
                                                          Criminal Division

Gregory S. Welch                                          April Term, 2020


Michael J. Harris, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender,
  Montpelier, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.     **COHEN, J.**  Defendant Gregory Welch appeals his conviction on jury verdict of lewd and lascivious conduct.  At trial, the State introduced evidence that defendant fled when police tried to arrest him, and the court instructed the jury on the use of flight evidence as suggesting consciousness of guilt.  Defendant argues that the court erred in failing to instruct jurors that they could not return a guilty verdict based solely on the evidence of flight.  We affirm.

¶ 2.     The State elicited the following evidence at trial.  Complainant lived alone in a home on a parcel of land in Newbury, Vermont.  Defendant, complainant's nephew by marriage, owned a trailer with his brother on an adjoining parcel.  The brothers would visit the trailer on the

weekends and complainant would often join them for drinks and conversation. The relationship between defendant and complainant was amicable but platonic.

¶ 3. On the evening of Friday, June 2, 2017, complainant saw the brothers and defendant's son drive to the trailer, and she drove over to say hello. There, she drank a beer with defendant before returning to her home for the night. Back home, complainant changed into her sleepwear and went to bed. Before long, she heard someone come through her door and found defendant on her bed, on top of her. Defendant tried to kiss complainant, grabbed her arm, touched her breasts, and told her he loved her and wanted to sleep with her. Complainant struggled to get defendant away from her and shoved him off the bed. Defendant lingered in the home as complainant repeatedly told him to leave. He left only when complainant said she would activate her medical-alert device. As defendant was leaving, complainant heard a "crash" from the direction of the home's doorway. Complainant then messaged her son and called her daughter, and her daughter in turn called the police.

¶ 4. After speaking with complainant, two state troopers went to defendant's trailer to question him about the incident. One trooper knocked on the front door while the second watched a rear entrance. Defendant spoke with the trooper at the front door briefly and the trooper asked him to accompany the officers to the station. Defendant said he needed to put on shoes and asked if he was under arrest. The trooper answered affirmatively and allowed him to go back inside and put on shoes, which defendant did, closing the door behind him. After several minutes, the rear trooper walked towards the front of the trailer, whereupon defendant's brother opened the front door and said defendant had run out the back door. The troopers searched the trailer and the surrounding woods and roads without success. They eventually arrested defendant on Sunday as he tried to leave the area in a vehicle.

¶ 5. The State charged defendant with lewd and lascivious conduct, unlawful trespass, and resisting arrest. Defendant pled guilty to the latter and was tried by jury on the first two

charges. At trial, the State introduced evidence of defendant's flight and proposed a jury instruction that flight could prove consciousness of guilt. Over defendant's objection, the court included the instruction and observed that more prejudice would result from its omission than its inclusion because the jury had already heard the flight evidence and needed to be instructed on its use. The court and the parties discussed the language of the instruction, which the court noted was based on the instruction upheld in State v. Unwin, 139 Vt. 186, 424 A.2d 251 (1980). Defendant did not object to the court's proposed language at the charge conference or after the jury was instructed.

¶ 6. The court first instructed the jury on several general particulars, including, "You must not single out any one instruction as stating the law. You must consider the instructions as a whole." It instructed jurors on the presumption of innocence, stating, "The presumption of innocence means that you must find [defendant] not guilty unless, after careful and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt that he is guilty." The court explained, "You are the sole judges of the evidence. The credibility of the witnesses and of the weight to be given to the testimony of each of them is up to you." Then came the flight instruction:

> There has been evidence introduced in this case tending to show the defendant fled after being informed by the Vermont State Police that he was being arrested due to the complaint made against him by [complainant]. If you find that he did flee, it does not raise any presumption of guilt. Such evidence has limited probative value, because there are many reasons for such conduct, such as fear, ignorance, confusion, or the like, which are consistent with the claim of innocence. But you are entitled to consider these facts if you find such to be the case as tending to show consciousness of guilt on defendant's part. In weighing any evidence of flight, consider the defendant's state of mind, his mental capacity and reasoning powers, along with all the other evidence as you find it, and give any evidence of flight and such other matters such weight as you think they deserve.

The court explained that the State had the burden to prove guilt beyond a reasonable doubt, which meant proving each of the essential elements of the offense beyond a reasonable doubt. After the court outlined the elements of the offenses and repeated the State's burden after each count, the jury deliberated and returned a guilty verdict on the lewd-and-lascivious-conduct charge and a not-guilty verdict on the unlawful-trespass charge.

¶ 7. On appeal, defendant argues that the court erred in failing to instruct the jury that it could not return a guilty verdict based solely on the evidence of flight. Relatedly, he maintains that because the court instructed jurors that they could "give any evidence of flight and such other matters such weight as you think they deserve," the jury could have given the flight evidence enough weight to return a guilty verdict on that basis alone. As defendant acknowledges, because he failed to object to the court's proposed language, we review the jury instructions only for plain error. State v. Alzaga, 2019 VT 75, ¶ 18, __ Vt. __, 221 A.3d 378.

¶ 8. We look to four factors in determining whether plain error was committed: "(1) there must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. Plain error in jury instructions is found only in extraordinary circumstances, "when the entire charge undermines our confidence in the verdict" and "the error affected a substantial right and had an unfair prejudicial impact on the jury's deliberations." Alzaga, 2019 VT 75, ¶ 18 (quotations omitted). We read jury instructions in their entirety, not piecemeal, to ensure that they "breathe the true spirit of the law, and . . . there is no fair ground to say that the jury has been misled." State v. Rounds, 2011 VT 39, ¶ 22, 189 Vt. 447, 22 A.3d 477 (quotation and alteration omitted). "Although the trial court has the responsibility to instruct the jury fully and correctly on every point raised by the material evidence, the degree of elaboration

4

lies within its sound discretion." Knapp v. State, 168 Vt. 590, 591, 729 A.2d 719, 720 (1998) (mem.).

¶ 9. When evidence of flight is properly admitted in a criminal trial, the jury can rely on it as circumstantial evidence of guilt. See State v. Scales, 2017 VT 6, ¶¶ 8-10, 204 Vt. 137, 164 A.3d 652 (discussing admissibility considerations). If the court admits the evidence, it must give a limiting instruction to guide the jury's use of the evidence. Id. ¶ 19. In State v. Unwin, we observed that evidence of flight has little probative value, and we held that such evidence "is not sufficient by itself to support a conviction." 139 Vt. at 193, 424 A.2d at 255. But we have never required trial courts to instruct juries in these precise terms and we have consistently upheld instructions using different language.

¶ 10. For example, in Unwin, the defendant stabbed a person and fled from the scene of the crime. At trial, the State introduced evidence of his flight, and the court instructed the jury as follows:

> There has been evidence introduced in this case tending to show that the defendant fled from the scene of the incident. If you find that he did this, it does not raise any presumption of guilt because there are many reasons for such conduct including fear, ignorance, confusion or the like, which are consistent with the claim of innocence. But you are entitled to consider these facts if you find such to be the case as tending to show a consciousness of guilt on his part. Weighing it along with his state of mind, mental capacity and reasoning powers, you are to give these matters such weight as you think they are entitled to under the circumstances.

Id. at 193, 424 A.2d at 255-56. Although the trial court did not explicitly instruct that flight evidence has little probative value and is not sufficient by itself to support a conviction, we rejected the defendant's argument that the instructions "encouraged the jury to give too much weight to the fact of the defendant's flight alone," and we held that the instructions were carefully limited and nonprejudicial. Id. at 194, 424 A.2d at 256. We upheld the instructions even though, as in the

5

present case, the court instructed jurors that they could give "these matters such weight as you think they are entitled to under the circumstances." Id. at 193, 424 A.2d at 256.

¶ 11. A similar result obtained in State v. Pelican, where the defendant shot a person and immediately fled the scene of the crime, which evidence was admitted at trial. 160 Vt. 536, 538, 632 A.2d 24, 25 (1993). When the defendant appealed the trial court's flight instruction, we again noted the limited probative value of flight evidence and its insufficiency to support a conviction, and we again affirmed the use of an instruction that did not use those terms but instructed the jury in part as follows:

> Evidence tending to show flight of the Defendant immediately after the commission of the alleged offense with which he stands charged and for which he is on trial is admissible, and if unexplained, tends to show guilt.
>
> . . . .
>
> In your consideration of the evidence of flight you should consider fully that there may be reasons for the flight which are fully consistent with innocence. Such reasons might include fear of being apprehended, unwillingness to confront the police, panic, or reluctance to appear as a witness. A feeling of guilt does not necessarily reflect actual guilt.

Id. at 542-43, 632 A.2d at 28.

¶ 12. We briefly considered a challenge to flight instructions in State v. Alexander, 2005 VT 25, 178 Vt. 482, 871 A.2d 972 (mem.). There, the defendant was convicted on jury verdict of attempted kidnapping and, like defendant's contention here, argued on appeal that the trial court erred in not instructing the jury that evidence of flight alone is not sufficient to convict. The trial court instructed that flight evidence "does not raise any presumption of guilt and . . . has limited value as proof," and we noted that the instruction "was stronger than saying that flight alone is insufficient to convict" because "it seriously undercut any probative value that the jury might assign to evidence of [the] defendant's flight." Id. ¶ 5.

6

¶ 13.     We also addressed consciousness-of-guilt evidence in State v. Scales, where we held that the trial court erred in admitting the evidence and then failing to instruct the jury on its limited use. 2017 VT 6, ¶ 15. There, we directed trial courts to the Unwin instruction and held that such an instruction should be given when consciousness-of-guilt evidence is admitted. Id. ¶ 19.

¶ 14.     To be sure, we have also upheld an instruction that informed the jury that "evidence of flight has very, very limited probative value, is by itself not sufficient to support a finding of guilt, and can mean very innocent things that are totally consistent with the concept of being not guilty like fear, confusion and ignorance." State v. Giroux, 151 Vt. 361, 366, 561 A.2d 403, 406 (1989) (quotation marks and alterations omitted). But we did not require this language to be used in subsequent instructions and we also pointed to Unwin as a similarly acceptable instruction. See id.

¶ 15.     If we upheld the instruction in Unwin, where the court instructed that flight does not raise any presumption of guilt because the conduct is consistent with innocent behavior, 139 Vt. at 193, 424 A.2d at 255-56; if we upheld the instruction in Pelican, where the court instructed that unexplained evidence of flight "tends to show guilt" but that "there may be reasons for the flight which are fully consistent with innocence," 160 Vt. at 542, 632 A.2d at 28; if we noted in Alexander that an instruction informing that flight evidence "does not raise any presumption of guilt and . . . has limited value as proof" was "stronger than saying that flight alone is insufficient to convict," 2005 VT 25, ¶ 5; and if we directed trial courts to the Unwin instruction in Scales and in Giroux, see supra, ¶¶ 13-14, then we cannot say that the trial court here committed an obvious error in instructing that flight evidence does not raise any presumption of guilt, has limited probative value, and is consistent with innocent behavior, but omitting that flight evidence alone is insufficient to support a guilty verdict. The omission falls within the trial court's sound discretion in choosing the degree of elaboration when instructing lay persons on the law. See State

7

v. Peatman, 2018 VT 28, ¶ 14, 207 Vt. 97, 185 A.3d 1257 (noting that "a trial court is not required to make every comment that conceivably could be made on the issues and evidence" and that "the degree to which the court is to elaborate on the points charged lies within the sound exercise of its discretion" (quotations and alteration omitted)).

¶ 16.     Our approval of the Unwin instruction, with its language regarding assignment of weight to flight evidence, and our subsequent reliance on that instruction in Giroux and Scales, also means that it was not an obvious error to instruct jurors that they should give flight evidence such weight as they think appropriate. Today, however, we identify the need for more specificity in this language. Without more nuance, this language could cause some or all jurors to assign flight evidence undue weight and return a guilty verdict on that basis alone. Rather, jurors should weigh flight evidence with other evidence in the case and assign the flight evidence and the other evidence the relative weights they deem appropriate, as long as a guilty verdict is not based solely on the flight evidence. Therefore, a more specific instruction is necessary. Best practice would be to instruct the jury that evidence of flight does not raise a presumption of guilt and has very limited probative value because flight is also consistent with innocent behavior, such as fear, panic, unwillingness to confront the police, and reluctance to appear as a witness. The court should then instruct jurors that they should weigh flight evidence along with all other evidence in the case and assign the flight evidence and the other evidence the relative weights they think appropriate, but that flight evidence is not sufficient by itself to return a guilty verdict. We reiterate that this is only a best-practice example; trial courts retain discretion in instructing juries using language lay persons in our communities will best understand.

¶ 17.     The instructions in this case do not constitute plain error for two other reasons beyond a lack of obvious error. First, reading the instructions as a whole, the charge does not undermine our confidence in the verdict. See Alzaga, 2019 VT 75, ¶ 18. Before the flight instruction, the court instructed jurors that they were not to single out any one instruction as stating

8

the law and that they had to consider the instructions as a whole. The court explained that they had to find defendant not guilty "unless, after careful and impartial consideration of <u>all the evidence</u>, you are satisfied <u>beyond a reasonable doubt</u> that he is guilty." (Emphasis added.) The court then repeated the State's burden after outlining the elements of each offense. As part of the flight instruction, the court instructed that evidence of flight "does not raise any presumption of guilt," that flight evidence has "limited probative value," and that "there are many reasons for such conduct, such as fear, ignorance, confusion, or the like, which are consistent with the claim of innocence." The court explained that in weighing the evidence of flight, jurors were to "consider the defendant's state of mind, his mental capacity and reasoning powers, along with <u>all the other evidence as you find it</u>," and that they were to give "any evidence of flight and such other matters such weight as you think they deserve." (Emphasis added.) The last statement, though problematic for the reasons identified above, was consistent with the jury's duty to weigh all the evidence in the case, its duty to find defendant guilty only if the State proved all the elements of the offense beyond a reasonable doubt, and the court's earlier instruction that, "You are the sole judges of the evidence. The credibility of the witnesses and of the weight to be given to the testimony of each of them is up to you." The court instructed the jury verbally and had print copies delivered to the jury room. Reading the instructions as a whole reveals that the jury was informed of the State's burden to prove guilt beyond a reasonable doubt, instructed on the limited probative value of flight evidence and its consistency with innocence, and told to weigh all the evidence before returning a guilty verdict. The instructions breathed the true spirit of the law and, though not perfect, do not constitute plain error.

¶ 18.    Second, because there was ample other evidence supporting the jury's verdict, we cannot say any error in the flight instruction had an unfair prejudicial impact on the jury's deliberations. See <u>Alzaga</u>, 2019 VT 75, ¶ 18. Complainant testified at trial, providing details of her visit to defendant's trailer and the evening's events. She testified that after she arrived home,

9

defendant entered her house and placed himself on top of her in bed, tried to kiss her, grabbed her by the arm, and touched her breasts. She also testified that she heard a "crash" as defendant was leaving. Defendant's brother testified that complainant drove to their trailer that night, drank a beer with defendant, and left after some time. The brother testified that defendant waited about fifteen minutes and then said he was going to complainant's house to check on her. The brother also testified that defendant left and came back about fifteen minutes later with the side of his head bloodied. One of the investigating officers testified that he found unidentified blood on the doorway of complainant's home. Complainant's son testified that he received a text message from complainant that night saying defendant had tried to climb into bed with her and that she was scared. A detective testified that she interviewed complainant on the night in question, and that complainant was visibly upset, shaken, and emotional. Photos of complainant's home were introduced as evidence, as was a photo of complainant's medical-alert device. We have no basis to find that the jury found defendant guilty of lewd and lascivious conduct based solely on the evidence of flight.

¶ 19. In sum, because the trial court did not commit an obvious error; because reading the instructions as a whole, the charge does not undermine our confidence in the verdict; and because we find no prejudicial impact on the jury's deliberations, we conclude that the court did not commit plain error in instructing the jury in this case.

Affirmed.

FOR THE COURT:

_____

Associate Justice

10